**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JERRY WILLIAMSON, *et. al.*,

                                            CASE NO. 04-74010

    Plaintiffs,                   HON. LAWRENCE P. ZATKOFF

v.

LEAR CORPORATION,
a Delaware corporation,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 8, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant Lear Corporation's Motion to Dismiss or in the Alternative for Summary Judgment. Plaintiff has responded and Defendant has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

## II. BACKGROUND

The facts of this case are largely undisputed. Plaintiffs are 163 current and former employees of Defendant Lear Corporation.[1] In addition, Plaintiffs are or were members of Local 174 of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (hereinafter, "UAW").

Plaintiffs were employed at one of Lear's manufacturing facilities in Romulus, Michigan. This facility was commonly referred to as "Romulus II" or "Rom II." Rom II was located at 36310 Eureka Road. It was used exclusively to manufacture products to be sold to Ford Motor Company. As a result of the loss of all Ford business, Lear made plans to close the Rom II facility. In March 2002, Lear negotiated a Plant Closing Memorandum of Understanding (hereinafter, "PCM") with the UAW. The PCM called for a termination of the Rom II – UAW collective bargaining agreement as of April 25, 2003. By December 2002, production at Rom II had ceased.

Most of the affected employees were able to obtain other UAW represented employment with Lear. Some began working at the "Romulus I" or "Rom I" facility which was located next to Rom II at 36300 Eureka Road. Rom I was used to manufacture parts for Daimler Chrysler. Rom I employees were also represented by UAW Local 174, but their employment was governed by a separate agreement, the Rom I – UAW collective bargaining agreement.

By the end of 2003, Lear's work for Daimler Chrysler had increased and there was need for additional production space. Lear informed the UAW that it would be moving the Rom I

---

[1] The lead Plaintiffs are Jerry W. Williamson and Donnie R. Turner. Both served as union representatives for UAW Local 174.

operation and Rom I workforce to the building that was previously used for Rom II work due to its larger size. In the December 22, 2003 letter, Lear made it clear that it was "not reopening the Romulus II Plant." In response to this letter, the UAW immediately informed the Rom I employees that Lear was transferring the Rom I work to the Rom II facility, but that this did not constitute a "reopening" of the Rom II facility. The UAW assured the Rom I employees that this was a correct application under both the Rom I and Rom II collective bargaining agreements.

Plaintiffs dispute both the UAW's and Lear's interpretation of the PCM and collective bargaining agreements. On October 13, 2004, Plaintiffs filed the present Complaint against Lear alleging that Lear violated the PCM and/or the Rom II collective bargaining agreement when it failed to grant seniority to Rom II employees. Now before the Court is Defendant Lear's Motion to Dismiss and in the Alternative for Summary Judgment.

### III. LEGAL STANDARD

> Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal pursuant to a Rule 12(b)(6) motion is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Although we must accept as true all of the factual allegations in the complaint, we need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (citations omitted).

*United Food & Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 745 (6th Cir. 2004).

Additionally, Fed. Rule of Civ. P. 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such

a motion by Rule 56.

A district court applies the following summary judgment standard under Rule 56.

> Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

*Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000).

## IV. ANALYSIS

Defendant offers three reasons why the Complaint should be dismissed: (1) Plaintiffs' §301 hybrid must fail because Plaintiffs' cannot establish that the UAW breached its duty of fair representation, (2) Plaintiffs failed to file suit within the six-month statute of limitations period, and (3) Plaintiffs failed to exhaust the UAW's internal appeals procedures. As it is unnecessary to address all three reasons, the Court will address Defendant's first two reasons for dismissal.

**A. Whether UAW Breached its Duty of Fair Representation**

Plaintiffs' Complaint asserts a hybrid action under § 301 of the Labor Management Relations Act. "A hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citation omitted). Defendants argue that Plaintiffs cannot establish that the UAW breached its duty of fair representation. The Court agrees.

In order to establish a breach of the duty of fair representation, Plaintiffs must show that the UAW's "conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty.'" *Garrison v. Cassens*, 334 F.3d at 538 (citation omitted). Plaintiff tries to establish each of these factors, but ultimately fails.

**1. Whether the UAW's Actions were Arbitrary**

In *Garrison*, the Sixth Circuit explained the standard for arbitrariness.

> With regard to the arbitrary prong, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127 (citation omitted). Mere negligence on the part of a union does not satisfy this requirement. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 376, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice. *See Walk v. P.I.E. Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992) (citations omitted). That is, "an unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id.* In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were "wholly irrational." *O'Neill*, 499 U.S. at 78, 111 S.Ct. 1127. The "wholly irrational" standard is described in terms of "extreme arbitrariness." *Black*, 15 F.3d at 585 ("[T]he relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith, or extremely arbitrarily, or discriminatorily.") (internal quotation marks and citation omitted).

*Garrison v. Cassens*, 334 F.3d at 538-39. Plaintiffs have failed to meet this high standard.

Plaintiffs argue that the UAW acted arbitrarily in interpreting the PCM and the Rom II collective bargaining agreement. Plaintiffs assert that the UAW and Lear were wrong to conclude that there was no "reopening" of the Rom II facility. The Court need not consider, however, whether the UAW and Lear correctly interpreted the PCM and collective bargaining

5

agreements. Instead, the Court need only make the relatively simple conclusion of whether there was a rational reason for interpreting the agreements as Lear and the UAW did. The Court finds that there was a rational reason for this interpretation.

This entire dispute centers around the interpretation of the following provision from the PCM: "In the event the Company reopens the Plant within two (2) years from the date of the plant closing; the Company will recall employees on the basis of seniority established in the Collective Bargaining Agreement." PCM, at 4. In addition, the following language from an April 17, 2003 Letter is disputed: "If Lear reopens the Romulus II Plant as a Production facility within two years from April 25, 2003; the Company will recall employees on the basis of seniority. This would not apply in the event Lear chooses to utilize the space as a warehouse, storage or other non-production facility." Plaintiffs argue that Lear's transferring of the Rom I work to the Rom II facility constituted a "reopening" of Rom II as a production facility, and thereby required Lear to grant seniority to Rom II employees. From the outset, however, Defendant Lear and the UAW have rejected this interpretation and have clearly stated their reasons.

In a December 22, 2003 Letter to the UAW, Lear explained that it was moving the Rom I plant into the Rom II building, but that it was "not reopening the Romulus II Plant." In a January 12, 2004 Memo to all Rom I employees, the UAW explained to workers that moving the Rom I operation into the Rom II facility did not constitute a reopening of Rom II: "Lear has not decided to reopen Plant II. They have decided to transfer work being manufactured for the Warren Truck Assembly Plant from Rom I."

On January 9, 2004, Plaintiffs Jerry Williamson and Donnie Turner wrote a letter to the

6

UAW expressing their concern that the PCM was being violated.  On January 29, 2004, the UAW responded and once again explained that Rom II was not "reopening," but that Rom I work was simply being transferred to the Rom II facility.

The Court finds that this is a rational interpretation of the PCM.  Accordingly, the Court finds that there are no genuine issues of material fact and that Lear's and the UAW's interpretation of the PCM and collective bargaining agreements were not arbitrary.

### 2. Whether the UAW's Actions were Discriminatory or in Bad Faith

Next, Plaintiff argues that the UAW's interpretation of the PCM and collective bargaining agreements were discriminatory and in bad faith against the Rom II employees. "Judging whether a union has acted discriminatorily or in bad faith ordinarily presents a simple and straightforward issue."  *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994).  This case is no exception.

As discussed above, at the center of this case is a dispute over a contractual term. Plaintiffs believe that when Lear transferred the Rom I operation to the Rom II facility that this constituted a "reopening" of Rom II under the PCM.  Both Lear and the UAW disagreed with this interpretation, and accordingly, did not call back those workers whose employment was governed by the Rom II collective bargaining agreement.

Plaintiffs are Rom II workers and now argue that the UAW is discriminating against them by honoring the Rom I collective bargaining agreement.  In addition, Plaintiffs argue that the UAW is acting in bad faith towards them.  There is no merit to these arguments.

As discussed in the previous section, the Court believes that there was a rational reason behind Lear's and UAW's interpretation of the PCM.  Furthermore, as the Sixth Circuit held in

*Ratkosky v. United Transp. Union*, the fact that Plaintiffs disagree with the UAW's interpretation does not show that the UAW acted discriminatorily or in bad faith. *See Ratkosky v. United Transp. Union*, 843 F.2d 869, 878-79 (6th Cir. 1988) (stating that "[t]he mere fact that plaintiffs are a minority group within their union organization and that they were adversely affected by the actions or inactions of the union does not establish that the union has acted with hostile or discriminatory intent.")

Lear was forced to close the Rom II facility due to the loss of business from Ford. Lear and the UAW negotiated the PCM and obtained a variety of benefits for Rom II employees. In addition, the UAW assisted nearly all Rom II employees in obtaining other employment with Lear. In fact, many of the Rom II employees are now employed under the Rom I collective bargaining agreement. These are not the actions of a union that was acting discriminatorily and in bad faith. In addition, no alleged facts suggest that the UAW acted discriminatorily or in bad faith.

For these reasons, the Court finds that there are no genuine issues of material fact and that the UAW did not act discriminatorily or in bad faith.

**B. Whether Plaintiffs Failed to Meet the Six-Month Statute of Limitations Period**

In addition to the above finding on the merits, the Court now addresses Defendant's alternative argument for dismissal. Defendant Lear argues that Plaintiffs failed to file their hybrid § 301 suit within the applicable six-month period. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151(1983). As further support, Defendant relies on *Noble v. Chrysler Motors Corp.*, which states: "A claim under § 301 accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting

the alleged violation." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994 (citations omitted).

Defendant asserts that Plaintiffs were informed of the UAW's position regarding the "reopening" of the Rom II facility in a January 29, 2004 letter. Accordingly, since Plaintiffs did not file suit until October 13, 2004, more than eight months later, Defendant argues that Plaintiffs' suit is barred as a matter of law.

Plaintiffs counter that they did not receive a final decision in the matter until March 24, 2004, and thus filed suit within the six-month period. The Court disagrees. The UAW's January 29, 2004 letter to Donnie Turner and Jerry Williamson clearly explained the UAW's interpretation that the Rom II facility was not being "reopened." The March 24, 2004 letter merely restated the UAW's position. Accordingly, Plaintiffs failed to meet the six-month statute of limitations period when they filed suit on October 13, 2004.

Plaintiffs offer the additional argument that the limitations period is tolled during the time period in which an employee attempts to exhaust their administrative remedies. *See Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1242 (6th Cir. 1993). Plaintiffs fail to consider an important limitation that the *Robinson* court placed on tolling. "[I]n order for the statute of limitations to be tolled, the internal union appeal must be able to afford the claimant *some* relief from the defendant. Tolling the statute of limitations while a claimant pursues *completely* futile internal union remedies does not serve the federal interests. . . ." *Id*. The Court finds that the UAW clearly explained its interpretation of the PCM in the January 29, 2004 letter, and that any further internal remedies would be completely futile.

For these reasons, the Court finds that Plaintiffs failed to file suit within the applicable

9

six-month statute of limitations period.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendant's Motion to Dismiss. Accordingly, Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  June 8, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 8, 2005.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

S:\Zatkoff\Marie ECF\04-74010.williamson.lear.dismiss.wpd